**ACE GLOBAL MARKETS/SYNDICATE 2488**
**SUBSCRIBING TO POLICY NA 0669276424**                    **PLAINTIFF**

**V.**                                                                                    **NO. 2:10cv93**

**ESTATE OF DORIE A. HUNTER, BETHANY MEDICAL**
**CLINIC**                                                                      **DEFENDANTS**

## ORDER

This cause comes before the court on the motion of plaintiff Ace Global Markets ("Ace")

for summary judgment, pursuant to Fed. R. Civ. P. 56. Defendants Estate of Dorie A. Hunter

and Bethany Medical Clinic ("Bethany") have responded in opposition to the motion, and the

court, having considered the memoranda and submissions of the parties, concludes that the

motion is not well taken and should be denied.

This is an insurance coverage action in which plaintiff Ace seeks a declaration from this

court that it has no duty to defend or indemnify its liability insured Bethany in a wrongful death

action filed in the Circuit Court of Bolivar County. In that underlying lawsuit, the Estate of

Dorie Hunter asserted medical malpractice claims against Bethany and the Bolivar Medical

Center, alleging that they negligently failed to diagnose and treat a pulmonary embolism which

resulted in the death of the wrongful death decedent. Specifically, the Estate alleged as follows

in the Bolivar County action:

> 10. The decedent ... presented to the Bethany Medical Clinic on July 14, 2005
> with complaints of black out spells, syncope, dizziness, and shortness of breath.
> The medical staff ordered a CT of the head at Bolivar Medical Center. The
> decedent was checked in at Bolivar Medical Center at 11:53 and underwent a CT
> scan. The CT scan was read and interpreted by Dr. Greg C. Downing at 1409 and
> electronically signed at 1709 on July 14, 2005 . . . .

11. After Dorie A. Hunter underwent the CT scan, she was discharged from Bolivar Medical Center and sent home without any followup or repeat CT scan. Bolivar Medical Center and defendant Downing failed to advise Bethany Medical Clinic of the results of the test and/or Bethany Medical Clinic failed to advise Dorie A. Hunter of the radiology findings and have her return to the hospital.

12. On July 15, 2005, at 0136, Dorie A. Hunter was transported to Bolivar Medical Center by emergency personnel with CPR in progress. She had no vital signs. A code blue team attempted to save her life, but were unsuccessful. She was pronounced dead at 0141. The emergency room physician and the death certificate list the cause of death as pulmonary embolism. An autopsy confirmed the pulmonary embolism as the cause of death.

The instant coverage action relates solely to the allegations against Bethany, which was insured under a Professional and General Liability Policy as to which plaintiff Ace is the sole participating syndicate. Plaintiff has presently moved for summary judgment, seeking a ruling that it has no duty to either defend or indemnify Bethany based upon the allegations in the Bolivar County lawsuit.

In seeking summary judgment, plaintiff relies upon Exclusion 4 of the liability policy, which precludes coverage for any claim "arising out of, directly or indirectly relating to or in any way involving . . . [s]ervices performed by a physician, surgeon, dentist, podiatrist, osteopath, or nurse midwife." Plaintiff argues that all of the allegations against Bethany in the Bolivar County action relate to conduct which is attributable to physicians acting on behalf of Bethany and are thus covered by Exclusion 4. The record indicates that Dr. Edward Earl Searcy was acting as a physician on behalf of Bethany during the relevant events in this lawsuit, and plaintiff argues that any acts of negligence on the part of Bethany could only have been performed by a physician such as Dr. Searcy, rather than by non-physician staff members at Bethany.

Significantly, the parties appear to agree regarding the basic parameters of the coverage

provided by the liability policy in this case. That is, defendants appear to concede that any negligent acts on the part of Dr. Searcy would not be covered under the policy, while plaintiff appears to concede that any negligent act by Bethany staff members who do not fall under the terms of Exclusion 4 would, in fact, be covered. The dispute among the parties centers largely around whether the allegations in the underlying lawsuit relate solely to the actions of physician(s) such as Dr. Searcy or whether they also implicate the actions of Bethany staff members.

Based upon the court's review of the record and of the allegations of the complaint, it appears likely that Ace will eventually be found to have no duty to indemnify Bethany in this case. Indeed, a clear preponderance of the claims against Bethany appear to relate to medical decisions which could only have been made by a physician and which thus appear to fall within the scope of Exclusion 4. However, plaintiff also seeks a ruling that it has no duty to defend Bethany in the Bolivar County lawsuit, and, on this issue, it must overcome obstacles presented by adverse Mississippi law and by its own prior actions in this case.

It is well settled that "the duty to defend is broader than the insurer's duty to indemnify under its policy of insurance: the insurer has a duty to defend when there is any basis for potential liability under the policy." *Titan Indem. Co. v. Pope*, 876 So.2d 1096, 1100 (Miss. App. 2004), *citing Merchants Co. v. American Motorists Ins. Co.*, 794 F.Supp. 611, 617 (S.D. Miss.1992). It is thus apparent that this court does not deal with *likelihoods*, but, rather, with *possibilities* in determining whether a duty to defend exists in this case. This is a crucial distinction, and plaintiff's own prior actions in this case appear to cast serious doubt upon its assertion that no possibility of coverage exists herein.

Prior to filing the instant action, plaintiff, through its senior claims counsel, wrote two reservation of rights letters to Bethany, in which it analyzed the potential for liability coverage based upon the allegations of the complaint. Importantly, both of these letters appeared to conclude that a potential for coverage existed. In its first reservation of rights letter, dated February 19, 2008, plaintiff raised only one potential defense to coverage, namely the policy's exclusion for punitive damages. In that first letter, plaintiff made no mention whatsoever of Exclusion 4, apparently overlooking the fact that it even existed. In a second reservation of rights letter, dated June 5, 2008, plaintiff did, in fact, raise Exclusion 4 as a *potential* defense to coverage, but it did so in rather conditional language which leaves the court with the impression that plaintiff believed that a potential for coverage existed under the policy. That is, plaintiff's claim counsel wrote as follows:

> This letter serves to follow-up and supplement our original acknowledge letter and reservation of rights, dated February 19, 2008. In reviewing the subject Complaint, the Policy, and the materials provided, we note the existence of an additional *potential* coverage issue that you should be aware of. Specifically, please refer to the Policy's Exclusions, which include the following:
>
> [quotation of exclusion 4 redacted]
>
> By letter of April 14, 2009, your Defense counsel, Chad Hutchinson, has informed us that Dr. Edwin Earl Searcy was an employee of the Bethany Medical Clinic in 2005, and during the timeframe which is the subject of this present litigation. On the other hand, we note that Dr. Searcy is not a named defendant in this case. However, if Dr. Searcy were to be named as an individual defendant in the future, he would have no coverage under Bethany Medical Clinic's policy; nor would this policy provide cover [sic] to Bethany Medical Clinic for the vicarious liability attributable to conduct of Dr. Searcy while working as its employee.

The second letter thus highlighted that it was only raising a *potential* coverage issue based on Exclusion 4, and it appeared to conclude that this issue might only arise if the underlying

complaint were amended to specifically include Dr. Searcy as a defendant. Such an amendment has not occurred to date. In the court's view, the clear implication from the second letter is that, at the time it was written, plaintiff itself believed that a potential for coverage existed based on the allegations of the complaint.

Defendants argue, and the court agrees, there are allegations in the Bolivar County complaint which could at least potentially implicate coverage under the policy, depending upon how the litigation develops. For example, the complaint alleges that "Bethany Medical Clinic failed to advise Dorie A. Hunter of the radiology findings and have her return to the hospital," and this language strikes the court as at least potentially encompassing acts of negligence on the part of Bethany's non-physician staff members. It is certainly true that this language does not contain a clear assertion of negligence on the part of staff members, but, by the same token, it does not expressly limit any allegations of wrongdoing to Bethany physicians either. In the court's view, it would be unrealistic to expect a plaintiff to draft a complaint with an eye towards clarifying potential coverage issues in a liability policy that it may not have even been aware existed. Regardless, it is plain that, with regard to the duty to defend issue, defendants need only point to a *potential* for coverage, and the court concludes that such a potential exists in this case.

Plaintiff argues that the complaint leaves no doubt regarding the applicability of Exclusion 4, but this begs the question as to why it failed to reach this conclusion in its initial analyses of the complaint. Indeed, plaintiff had the exact same allegations before it when it wrote two reservation of right letters which clearly appear to contemplate a possibility of coverage, and this fact leaves it in a poor position to argue to the contrary today. Indeed, even in its summary judgment brief, plaintiff asserts that it filed this declaratory judgment action

"[b]ased upon the exclusion and the *possibility* that the claim submitted by Bethany was outside the scope of coverage of the insurance contract." [emphasis added]. Clearly, if there is only a "possibility" that Bethany's claim is outside the scope of the insurance contract, then there is also a possibility that the claim falls within the policy's scope. That is all that is required for the duty to defend to arise.

In light of the foregoing, the court concludes that plaintiff very likely has a duty to defend Bethany in the Bolivar County litigation, and its motion seeking summary judgement on this issue will be denied.[1] The court concludes that a ruling on the indemnity issue should await further developments in the Bolivar County lawsuit, even though, as noted previously, it appears likely that Ace will eventually be held to have no duty to indemnify in this case. The court notes at this juncture that a trial is scheduled to be held in this case on August 15, 2011, and the parties have informed it that the Bolivar County action is stayed pending developments herein. For its part, however, this court sees little benefit to having a trial regarding what might potentially be proven in the Bolivar County litigation when it makes far more sense to simply wait and see what actually *is* proven in that case. In so concluding, the court notes that the Bolivar County action precedes this one by over two and a half years, and it makes far more sense to permit that case to proceed to a verdict, at which time the court can decide any indemnity issues which remain.

Indeed, it is far from certain that the Bolivar County litigation will result in a verdict against Bethany at all; there is every possibility that the jury will return a defense verdict or decide that any negligence in that case was attributable solely to the Bolivar Medical Center.

---

[1]In the court's view, it would be improper to issue a formal ruling that plaintiff has a duty to defend Bethany since the sole dispositive motion before the court is plaintiff's motion for summary judgment.

Assuming that either of these events occurs, it would be unnecessary for this court to consider any indemnity issues at all, since Bethany is the sole liability insured in this case. Assuming that a verdict is, in fact, returned against Bethany in the Bolivar County litigation, this court will then be able to analyze that verdict and scrutinize the record to determine any outstanding coverage issues. This approach strikes the court as being far superior to simply speculating beforehand regarding what might be proven in a lawsuit which (despite its age) remains stayed at a relatively early stage of litigation.

The court will therefore deny plaintiff's motion for summary judgment and stay this coverage lawsuit pending further developments in the Bolivar County litigation. The parties may, if they so desire, attempt to persuade the court to alter its planned approach in this regard, but, at this juncture, the court is rather strongly inclined to follow this course of action.

In light of the foregoing, it is ordered that:

1) plaintiff's motion for summary judgment is denied;

2) the trial in this matter is continued indefinitely;

3) this case is stayed pending developments in the Bolivar County litigation; and

4) defendant's "motion to establish a deadline to file response" [50-1] to the motion for summary judgment is dismissed as moot.

SO ORDERED, this 8th day of August, 2011.


**/s/ MICHAEL P. MILLS**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**